

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>Jayci Emiko Tashiro Tabar,<br><br>Debtor. | Case No. 18-01204<br>Chapter 13<br><br>Related Dkt. No.: 104 |

## ORDER REGARDING DISBURSEMENT OF
## SALE PROCEEDS FROM MARITAL HOME

### I.     Background

Jayci Emiko Tashiro Tabar ("Ms. Tabar") and her ex-husband,
Jonathan Kale Tabar ("Mr. Tabar"), own a home in Kapolei, Hawaii
("Marital Home"). The Hawaii Housing Finance and Development
Corporation ("HHFDC") has exercised its right to buy the Marital Home.
Ms. Tabar and Mr. Tabar disagree on how to divide the proceeds from the
sale.

### a. The Bankruptcy

Ms. Tabar filed for chapter 13 relief on October 22, 2018. ECF 1. Ms. Tabar identified the Marital Home as owned by herself and another. *Id*. at 11.

The Marital Home is subject to a mortgage in favor of Castle & Cooke Mortgage, LLC. ECF 71-1 at 2. Under the plan, Ms. Tabar elected to "cure and maintain" the mortgage by making payments to the trustee for the prepetition arrearage and remaining current on the postpetition mortgage payments as they came due. ECF 2 at 2-3. The court confirmed her plan on January 25, 2019. ECF 19.

Ms. Tabar fell behind on her postpetition mortgage payments. The mortgage lender sought relief from the automatic stay. ECF 69. Ms. Tabar countered that the lender had not complied with the notice requirements of Fed. R. Bankr. P. 3002.1. Ms. Tabar and the mortgage lender resolved the dispute in a stipulation in which they agreed that, as of January 2021, the postpetition mortgage arrears were $7,523.43 and that Ms. Tabar would cure her defaults by making additional payments for twelve months. ECF 87.

U.S. Bankruptcy Court - Hawaii   #18-01204   Dkt # 121   Filed  01/22/24   Page 2 of 11

The Association of Unit Owners of Nohona III at Kapolei ("HOA") filed a proof of claim for unpaid fees in the amount of $11,479, secured by a lien on the Marital Home. Proof of Claim 6.1. All of the fees claimed in the proof of claim accrued before the petition date.

On April 16, 2020, the HOA moved for relief from the automatic stay. ECF 37. The HOA claimed that, in addition to the prepetition arrears, Ms. Tabar had failed to make postpetition payments in the amount of $8,932.85. ECF 37 at 1. At the preliminary hearing on the motion, Ms. Tabar's counsel stated that the postpetition balance was only $200. ECF 46. The HOA withdrew its motion on June 22, 2020. ECF 51. The HOA did not explain why it withdrew the motion, but presumably Ms Tabar either convinced the HOA that there was no postpetition default, cured the default, or made a catch-up arrangement that satisfied the HOA.

## b. The Divorce

Mr. Tabar filed for divorce on September 9, 2022. 1FDV-22-0002083.

Mr. and Mrs. Tabar filed a stipulation in this court. They acknowledged that they had entered into a mediated agreement that

U.S. Bankruptcy Court - Hawaii   #18-01204   Dkt # 121   Filed  01/22/24   Page 3 of 11

provided (among other things) for the sale of the Marital Home and that

the family court had entered an order effectuating that agreement. They

stipulated for relief from the automatic stay to allow the parties to

> proceed with all aspects of [the divorce proceeding], including the division of their property as contemplated; provided, however, that (i) the sale of the [Marital Home] and the disbursement of the sale proceeds of the [Marital Home] shall be subject to Bankruptcy Court approval . . . and (ii) [Ms. Tabar's] portion of the surplus sale proceeds after payment of the existing mortgage and costs of sale shall be paid to the [chapter 13] Trustee and applied to [Ms. Tabar's] plan.

ECF 97 at 4. This court approved the stipulation on March 22, 2023. ECF 97.

In August 2023, the family court entered a "Divorce Decree." The

Decree required the Marital Home to be listed for sale immediately, and that,

while the sale was pending, Ms. Tabar would have "exclusive use and

occupancy" of the Marital Home and would be "responsible for the monthly

mortgage and Homeowners' association payments." *Id.* at 24. The Decree

acknowledged that HHFDC was exercising its right to buy the house. *Id.* The

Decree required all attorney's fees "associated with the HHFDC buy-back

[to] be equally split (50/50) between the parties[,]" and "other associated fees

and/or expenses associated with the HHFDC buy-back [to] be equally split

(50/50) between the parties." *Id.* Both parties must work with attorney Lars
Peterson (Ms. Tabar's bankruptcy counsel) to "effectuate the sale, to include
but not be limited to obtaining the Bankruptcy Court approval of the sale."
*Id.* at 25. Net proceeds from the sale were to be split 50/50. *Id.* at 24.

The Divorce Decree states that, "from [Ms. Tabar's] share of the
proceeds of the [Marital Home], escrow shall pay the remaining bankruptcy
obligation due and owing by [Ms. Tabar]." It recited that any joint debts
"will be borne by the party who originally incurred such debt or debts," and
that they each would be solely responsible for paying their own sole debts.
*Id.* at 28. Finally, the Divorce Decree specifies that "Each party shall be solely
responsible for his or her own tax liability, if any." *Id.* at 29.

### c. The Motion to Approve Sale

On September 29, 2023, soon after the family court entered the Divorce
Decree, Ms. Tabar filed a motion to sell the Marital Home to HHFDC. ECF
104. The purchase price was $382,187.31. *Id.* at 2. Two liens were listed: (1)
the mortgage, $296,124, and (2) the HOA lien, $11,213.90. *Id.* Costs of escrow
were $3,739.96. *Id.* Summed together, $311,077.86 represented the costs of

U.S. Bankruptcy Court - Hawaii   #18-01204   Dkt # 121   Filed  01/22/24   Page 5 of 11

closing and paying off outstanding debts secured by the Home. Ms. Tabar listed $10,000 in attorney fees to be paid to Mr. Peterson from the gross proceeds. *Id.* The final amount to be split between Mr. and Ms. Tabar was $61,109.45. *Id.*

Mr. Tabar filed a response to the Motion to Approve Sale. ECF 109. Mr. Tabar did not oppose the sale but made five requests. *Id.* at 2. First, he wanted the proceeds divided in half before any of Ms. Tabar's debts were paid, except an IRS debt from 2018-2021. Second, the attorneys' fees for Ms. Tabar's bankruptcy should come from her portion of the proceeds. Third, unpaid HOA fees should be deducted from Ms. Tabar's share. Fourth, Mr. Tabar wanted a credit for $750 escrow and HHFDC fees that he prepaid. Fifth, Mr. Tabar requested that an alleged mortgage arrears of $25,525.11 be paid from Ms. Tabar's share of the proceeds.

After a hearing, the court approved the sale. ECF 112. All proceeds the sale, after satisfying the liens and paying standard closing costs, were to be paid to the trustee. ECF 111. After a further hearing on the disbursement of the proceeds, the court took the matter under advisement. *Id.*

U.S. Bankruptcy Court - Hawaii   #18-01204   Dkt # 121   Filed  01/22/24   Page 6 of 11

## II.     Discussion

The Divorce Decree, to which Mr. and Mrs. Tabar agreed, clearly and concisely provides the rules for allocating the sale proceeds. But the record is insufficient to permit me to apply those rules and calculate the exact amounts distributable.

Concerning the alleged tax debt, Mr. Tabar is correct that the joint debts should be paid before the proceeds are split and that Ms. Tabar's sole debts should be paid from her half of the net proceeds and not his. He asserts that, under this rule, the taxes for 2018-21 should be paid before the proceeds are split. But he provides no information about the existence, nature, or amount of those taxes. The Internal Revenue Service filed a claim based on income taxes for 2016 and 2017, but the proof of claim does not indicate whether Mr. Tabar is also liable for those taxes, and no claim has been filed for 2018-21.

The mortgage and HOA debt will be (or have already been) paid in full at closing out of the gross sale proceeds, in order to obtain a release of the liens and pass clear title to the buyer. But Mr. Tabar correctly asserts that,

U.S. Bankruptcy Court - Hawaii   #18-01204   Dkt # 121   Filed  01/22/24   Page 7 of 11

under the Divorce Decree, Ms. Tabar is obligated to pay the mortgage installments and HOA fees accrued while she exclusively possessed the Home. Therefore, if the HOA claim at the closing date includes any unpaid HOA fees that accrued while Ms. Tabar had exclusive possession, that amount should be subtracted from Ms. Tabar's share and added to Mr. Tabar's share. Similarly, if there were delinquent mortgage installments for that period at the closing date, the amount of those payments should be subtracted from Ms. Tabar's share and added to Mr. Tabar's share, But the evidence does not show what part, if any, of the outstanding HOA fees accrued during that period or the amount of any delinquent mortgage payments.[1]

The third item is Mr. Tabar's request for a $750 credit for escrow fees. Mr. Tabar represents that he made a payment directly to a "Lorna Komatei with HHFDC on 8/15/2023[.]" ECF 109 at 2. Mr. Tabar's statement is unsworn, and there is no documentation corroborating this payment.

---

[1] The unpaid amount probably accrued during the relevant period: the HOA filed a motion for relief from the automatic stay in April 2020, claiming that the fees were delinquent, ECF 37. But it withdrew its motion for relief from stay in June 2020, ECF 51, probably because Ms. Tabar cured the default. The unpaid amount due to the HOA now probably accrued after June 2020, while Ms. Tabar occupied the Marital Home. But this is mostly conjecture.

U.S. Bankruptcy Court - Hawaii   #18-01204   Dkt # 121   Filed  01/22/24   Page 8 of 11

The fourth disputed item is Lars Peterson's fee. Mr. Tabar argued that because he is not in bankruptcy and Mr. Peterson does not represent him, Mr. Peterson's fees should be deducted from the Ms. Tabar's proceeds. But the Divorce Decree provides that "any and all attorneys' fees . . . associated with the HHFDC buy-back shall be equally split (50/50) between the parties," and it recognizes that Mr. Peterson would obtain this court's approval of the sale, without which the sale could not occur. Thus, the fees for Mr. Peterson's work that is necessary to sell the Marital Home should be paid from the gross sale proceeds, so Mr. and Mrs. Tabar will bear equal shares of those fees. Mr. Peterson has filed applications for approval of his fees, but he has not stated what portion of the fees are necessary to effectuate the sale.

In order to obtain the evidence needed to resolve these questions, the court adopts the following procedure.

1. Ms. Tabar must file a report of sale as soon as possible after the sale closes.

9

2. Not later than February 5, 2024, Ms. Tabar must file one or more declarations under penalty of perjury, along with supporting documentation, about: (a) whether Mr. or Ms. Tabar owe any state or federal taxes for the period 2018-21, and whether such taxes are jointly owed by both of them or solely owed by one of them (and why); (b) whether Ms. Tabar paid all monthly mortgage payments and HOA fees that became due or accrued while she had sole possession of the Marital Home, and if she did not, the due date and amount of each payment that she did not make; (c) the amount of any fees or charges related to the sale that either party paid out of their own funds before closing of the sale; and (d) the amount of Mr. Peterson's fees that were necessary to effectuate the sale of the Marital Residence.

3. Not later than February 20, 2024, Mr Tabar must file one or more declarations under penalty of perjury, along with supporting documentation, about the same topics.

U.S. Bankruptcy Court - Hawaii   #18-01204   Dkt # 121   Filed 01/22/24   Page 10 of 11

4. Not later than February 27, 2024, Ms. Tabar may respond to Mr. Tabar's filing.

5. The court will decide the matter on the written submissions unless, not later than February 27, 2024, Mr. or Ms. Tabar files a written request that the court hold an evidentiary hearing (trial) on the disputed issues.

**END OF ORDER**